Good morning, Your Honor. Good morning. I and my former wife, Kathy Michelson, were subject to an audit and subject to a bank deposit analysis to determine alleged unreported income. Which they can do if your books and records aren't provided. That is correct. And they say you dragged your feet in providing them, so that's why they had to go to Plan B. That is correct. What's the answer to that? And we, I have provided analysis in our brief as to why the EDA was inappropriate. It should never have been applied. When did you turn over, when did you turn over all the tapes, the cash register tapes? At the time of the audit, I spent 12 days with the auditor, personally, sitting down with the auditor, providing the cash register tapes and the computerized system that summarized those tapes to determine income. Those tapes were brought in to the tax court also. What defect did they have with the tapes that they complained about? I don't think that there was any defect. I don't think that the auditor understood the system that we utilized in keeping track of the daily sales. They said they, you gave them the tapes, they said they didn't understand it? That's correct. Actually, if you look at a daily tape, they're relatively complicated in terms of a cash register at the end of the day. They're called Z1 tapes, and you have returns, there's a lot of different adjustments that happen and are summarized in those daily tapes. What was puzzling to me is that these people looked at cash register tapes all day long. What was so difficult to understand about this tape? I think it was just this auditor. I think it was just this auditor. I could not get to the point where she understood exactly what we were doing. Well, obviously, though, then when you appealed that, then there was a reduction in the amount that you owed there. So are you saying that the next person that looked at it and reviewed it the same, they didn't understand it as well? Or they understood it a little better because it was a little more favorable? I think that's right. I think that's right. As we move through this process, as we move through the BDA process, we started with $138,000 being alleged as unreported income. The tax court, after looking at the evidence, determined that it was approximately $26,000. And I'm going to have an analysis here and ask you for an adjustment of an additional $19,000, which leaves, which moves that original BDA down from the $138,000 down to $7,000. And as we know, a BDA is, it's not only, even if we say, okay, the BDA was reasonable, it should have been, it was appropriate to use, it needs to be reasonably accurate. Maybe not flawless, but it needs to be reasonably accurate. And I say the fact that it's moved down from $138,000 down to $7,000, I mean, that's prima facie evidence that it isn't reasonably accurate. And we ought to go with the return. The return had over a million dollars of income on it in terms of this sales business. And we're talking about $7,000 in the end. I just think the return should stand on its own. It was correct, and we ought to ignore the BDA. One, we provided all the records, and the BDA wasn't appropriate. But two, it wasn't reasonably accurate. Well, let's assume that I don't agree with you. I'm not speaking for anyone or for assumption purposes now that we're getting into the bank deposit. Let's just say I think that that was an appropriate method to do it in light of the way that you, what you didn't do or what you didn't make clear. The part of your argument that I'm having the most difficulty with understanding from both sides here is, has to do with using the wage adjustments relative to the bank deposit method. And I'm having trouble understanding your argument. I'm having trouble understanding their argument. And so here's where it's more difficult for you because you have the burden of showing me that the tax court was wrong on that. So I just, so you need to convince me that the tax court was wrong on that. And I honestly can't, I'm not finding that either of you are making a very persuasive argument. And if they're both equally unpersuasive, then you're going to lose because you've got the burden on that as the appellant. I understand that. And I thank you for that question. We have put together, this comes, this is just a summary schedule. I need you to talk into the microphone. Thank you. This is a summary schedule of the excerpts of record. Is that the same one that's in your briefs? It is not. It's a summary. It's a demonstrative schedule. It comes from the excerpts of record, the W-2 that is in Exhibit 4, page 5. And I'll have that. I'll show you the exact, I'll show you that W-2 in a second. But the problem we have here is that the government is double counting 401K contributions. As you know from your W-2, there's Medicare wages, which is the gross amount. Any contribution that you make to the 401K comes off the top of that number. And the W-2 wages that get reported on the return are net of your contributions to the 401K. So in your W-2, the amount listed in Box 1 already netted out the 401K. That's correct. And then you're saying that he took it out again by on Box 14, was it, or whatever the other? Yes, whatever Box that is. Okay. He takes it out down here. He takes out properly all the withholding. I agree with that. Takes out all the withholding. This is the correct number that I'm arguing should be a reduction in the BDA. He takes out then this second time, in effect, the contribution to come up, and this is for 1998, by the way, to come up with this adjustment of $54,000. There's double counting of the 401K contribution. And just to make it clear, I have. Okay, and also, why don't you deal with what their argument is on why they say they can do it that way? I think they're misunderstanding the fact that they're double counting the 401K contribution. Go to the podium, would you please? We're making a recording of this. I'm sorry. I'm sorry. I think that they're just arithmetically making a mistake in not realizing, not understanding that off the top, right off the top, the 401K contribution is subtracted to come down to taxable wages. I mean, you can see that on. Here's the W-2, and here's the Medicare wages, the $78,000, and here's the contribution for 401K. Subtracting that from this, you come up with the $71,000. This is what gets recorded on line one on the 1040. So you made that argument in front of the tax court? Yes. Yes. And it was summarily dismissed for a reason that I could not understand. Frankly, I believe the tax court just deferred to the IRS in terms of their analysis. I mean, that's very common in these kinds of cases, just to defer to that bank deposit analysis. All right. Well, first off, there isn't. The problem, I guess, that I'm having here is, just so that I understand your argument, is because they revert to the bank deposit, which are challenging, I realize, but they revert to that because they're saying, your record's on an order, we can't figure anything out, and so we're entitled to do that. So there isn't exactly any law that says when you use the bank deposit, then you have to go to this next point and look at it that way. But you're saying it only makes sense that if you're going to use the bank deposit, then don't double-count on me. Exactly. That's your argument? Exactly, Your Honor. Exactly. This is strictly an arithmetic mistake that they are making. That's all it is. They're double-counting the 401K contribution. All right. Is there any dispute, though, let's say, between the two of you? Let's say if we accepted your argument that it's double-counting. Is there any dispute as to the amount? There is no dispute. Well, I'll ask them that because sometimes you say there's no dispute. This all comes from the W-2. It's on the record. There is absolutely no doubt that all of the income on that W-2 was reported on the return. It's absolutely crystal clear. If you're right about this and we send it back and it's a $7,000 arithmetic error in calculating your income, what does that reduce the judgment from? A couple of thousand bucks. A couple of thousand dollars. However, this is just one year. This was from 1998. The same issue applies to 1997 and to 1999, and the total adjustment is around $19,000. You only have about four and a half minutes left. Did you want to reserve some time for rebuttal or did you want to use it all up now? I'd like to go to my last point. Okay. Does that include the legal costs issue? I'm going to speak to that right now. Okay. And where in the record is the evidence to support that? That was my question. There is two inches of receipts that support these items. Meals, travel expense, other expense. Counsel for the respondent, you know, says that this is just an illicit receipt. True. It's a very tedious process sometimes. I want to make one point here. Judge Laurel is a great judge, a great tax court judge. His opinion in this case was one of the last opinions he wrote before he retired. In my view, with respect to the deductions issue, which he seemed to disallow out of hand, even though there were all of these receipts, I think that there wasn't sufficient time spent with those receipts. From that standpoint, I think it was arbitrary, capricious. Well, but I guess some of this that I want to say is you can't just go into court and just dump a whole bunch of receipts. I didn't summarize these receipts. There are summary schedules that summarize those receipts that are included in my opening brief. Okay. Then let me just take it further. If you don't mention a receipt, all right, in your opening brief, and you're not bringing that to our attention, do we have to go through all of them and just like and say, well, okay, here's a couple here that maybe, you know, my approach to that would be, I'll look at the ones that you call to our attention that are wrong, but I'm not going to look at every single one and say in the event that I sign law, maybe I'd give you that one. I understand. And here's what I would like to propose. I'm not sure exactly what procedure would be appropriate, but maybe we appoint a master or some other party that is agreeable to the parties here to take a second look at these receipts and give them a fair look-see. On what ground? I mean, this is not a trial de novo here. This is an appeal. No, it's not. But, I mean, if one concludes that the proper – If you win, you get a new trial in front of the tax court, right? That's what happens. And then the tax judge, if this judge is retired, then somebody else will give you a new trial. Well, I would think that we could – I would think that we – the record is set. The receipts are in place. I would think that an extraordinary order could be issued appointing a master to look at these receipts. It's a little more extraordinary than we usually see. But we only have about a minute and a half, so why don't you reserve that for rebuttal and we'll hear from the commissioner. Thank you, Mr. LeBlanc. Good morning. Good morning. May it please the Court, my name is Richard Parker. I'm with the Department of Justice Tax Division Appellate Section. I represent the commissioner. With respect to the use of the BDA analysis, and I want to be brief on this, the initial auditor went through the materials, and it's not that she did not understand the receipts. She found that they were not reliable, and that's why they had to go to the BDA analysis. Not only were taxpayers not cooperative with the initial auditor, they were not cooperative with the appeals officer as well. As respect to the adjustments made by the tax court, several of those, if not many of those receipts were provided for the first time at the tax court trial, so they were never even considered at the either exam level or the appeals level. Well, okay, assuming that we give you that they weren't cooperative, and so when you went to tax court, other things were produced, and so that the tax court looked at them and said, you know, that there is something here, and so the number goes down. Okay, and let's just assume for those purposes that that's the reason. But you heard where my focus was on the double counting. When we were briefing this, we made every effort to clarify and make sure and confirm that the calculations were correct in the bank deposit analysis and reviewed it, and we believe the tax court's resolutions issue is correct. However, nevertheless, in light of the taxpayers' arguments and the complexity of a bank deposit analysis, we are willing to go to our client one more time, have them redo the bank deposit analysis and confirm their calculations, and what we would propose to do is submit a letter to this court within 21 days of our findings with respect to the 401 calculation. They have in their reply conceded the state law issues. The only issue left is the 401K. Obviously, we want it to be the right answer. We don't want a double vote count, so we would like the opportunity to confer with our client one more time and advise the court of those determinations. Well, I know, but that's been going on for a long time. If he basically convinces us to a certain point that, yeah, hey, the double counting went on, why should we go further? Why should we wait? This is the witching hour. It's like he says, well, now, why don't you appoint a special master and do all of that? And what Judge Silverman is saying is, okay, if you convince us there was error, then you go back and that's what flushes it out. We don't need to do a special master. If he convinces us, if he shifts, moves the burden enough and says, well, look, they didn't give us any credit for these 401K things that double counted, why shouldn't we just take care of it right now? Let me add a PS to that and reexamine it when it goes back to the tax court. The issue here is, again, the burden is on him. We confirmed with our client and they said the calculations were correct. We believe the tax court did look and determined that the taxpayer did not meet his burden Well, I'm kind of getting a little convinced by what he's saying here, and there's nothing that you're telling me that says you didn't double count it. And that's why we're prepared to go to the client and confer one more time for the calculations and to advise the court. Why didn't you go to the client yesterday? I have gone to the client several times throughout this process, Your Honor. Again, it's a complicated analysis. It's more than just this issue. It's to make sure the calculation is correct. And we do want to make sure there's a right answer here. Let me ask you to change the subject for a second. He was on the witness stand before the tax judge and he's going through these receipts. And at one point the tax judge says, in effect, you know, you substantiated this already. This is getting cumulative. Go on to something else. And he says, okay. And then when the tax judge's decision comes out, he says, well, you didn't offer enough proof on this subject after you just cut it off. What do you say to that?  I would first say that the tax court has the ability to make sure its trial is running properly and it doesn't have a huge amount of time to go through receipts. But when you cut them off and say you've met your burden, it's all cumulative at this point. You don't need to do any more. And then you rule against someone. Right. Yeah, the tax court in this case didn't say you met the burden. It just says, I believe that you can testify as to these receipts. And that is not anything inconsistent with his after-the-fact determination. He said something like there's been sufficient substantiation and now it's getting cumulative when you go on to something else. And then when the decision comes down, he says, you know, you didn't have enough proof on this. Your Honor, again, this was not an issue that was raised in the post-trial briefs by the taxpayers. It wasn't brought to the tax court's opinion. The tax court, I believe, knows what its rulings were. It made a considered rational determination in its opinion that we believe is correct. I'm not going to second-guess what the tax court did. That's our job to do that, I guess. That's our job. We believe the tax court made the determinations, looked at the burdens appropriately, and did so. It made a reasonable, rational decision. And it should not be held to some comment that it made during the trial that wasn't even brought to its attention in the post-trial briefing. Well, except for go ahead. I was just going to remark about the 1997 travel expense deductions. Isn't it somewhat problematical that the tax court stopped Mrs. Michelson, her testimony before she could substantiate those deductions? I don't believe so at all. It seems to me that there was a cutoff. It sliced her right off there and didn't allow her to continue to substantiate them. Right. Again, it's the tax court's and the judge's ability to determine what's going on in its trial and to make sure it's running smoothly. It was supposed to be a three-day trial. It got moved down to two days. And they're trying to hear all this testimony of taxpayers who had met their burden and presented the information. Well, if it is, in fact, cumulative, but if a person could present more to be convincing, you can't cut them off and then rule against them. I mean, that's trial 101. When someone's sitting up there and they're giving testimony and you're saying, okay, it's cumulative, you don't need to say any more on that, there's an implication there that you've covered that point. But then later, then you don't stab them in the back and say, you didn't do enough. Right. Your Honor, I believe the case here is that the tax court was looking at the trial and saying, I believe you can say what you're saying. That goes to a credibility issue. She can say what she's saying. He can say, I believe that you can sit there and say what you're saying. It does not mean the trial court believes what she's saying. It just means at this point it's cumulative. You're saying this per receipt, per receipt, per receipt. I can say that per receipt, per receipt, per receipt. It doesn't mean that I'm going to say it. That's semantics here. No, I'm just trying to say this is what the trial court, you know, I have to assume the trial court knows what it's doing and the tax court knows what it's doing. And when I was reading the transcript, it said, I believe you can justify during your testimony. Again, that doesn't mean that he found it credible. But that's not what the court said. That's not what the court said. The court could say, I don't believe that unless you can come up with some other way of substantiating. But the court just said, when you say it's cumulative, you're just saying it doesn't prove any more than you've already proven. But then you can't later come back and say that substantial evidence didn't support what you, you know, if the other evidence would have proven more, you can't cut someone, you know, that. And the only evidence was the testimony. So, I mean, I would have to think the tax court. Again, this is a clear error decision. It would have to be that the tax court made clear error in this. And I don't think the fact that the taxpayers and the commissioner had a chance to do post-trial briefs, this issue wasn't raised, and then the tax court issued an opinion that was well thought out and articulated for its reasons why it didn't make the decisions or allow the deductions. Again, I'd like to address what they raised in that brief. The fact is the burden was on taxpayers. For the first time in the reply brief, they tried to say that the brief should have shifted back to the government. The fact is the burden proof does not shift to the government unless they have cooperated, kept all their records, and responded reasonably with requests for information. They did not do that. The court specifically found that they did not do that, neither at the initial audit or during the appeals, which they had requested. They were never cooperative. And that's part of the reason we are here, is that they were not cooperative. So the burden was on them, and they have not met that. Again, with respect to the gift certificates, they say they don't concede it, and say that we argue they conceded it. What we said is they do not contend in their opening brief anything about the gift certificates, and therefore it's waived, and therefore it is conceded. And with respect to their allegation that the government is cherry-picking their receipts, we did not cherry-pick the receipts. If you look at our brief on pages 47, 48, through 49, there are substantial irregularities with the receipts they provided for their travel, for their meals and expenses. They're from different countries. They're for different parts of the trips. They're denominated in different currencies. They do not provide the information that's required as to who it was for, where it went, why was the business connected. The same problem is with the schedules. It does not give information. It just gives a date and the amount spent. It doesn't give any substantiation, and that's what the court was looking at. Again, the task force has just failed to meet their burden of proof. Well, I guess I would disagree with you on that. I think that they've met their burden to at least say that you double-counted. And I think from the standpoint of your client taking the position, we'd like to tell the court later why we didn't double-count, this really is the time and place that they should give you that kind of information to be able to point to the record and say, this is why we didn't double-count it because this is how we figured it in. And I don't think that, you know, I think at that point when they, it does look like they've met their burden to at least put that before us. And the response that your client is giving you is, well, we'll eventually tell you why you didn't, but that's past the court date. Right. Well, how about another nit here that I want to pick? That has to do with that case register, that purchase. But, you know, it's suggested here that it was a personal expense. Given the nature of this item, that seems a little doubtful to me. Right. I don't believe that in our brief. We address in the brief and actually with the business reimbursement expense and the cash register, the reimbursement, the expenditures came after the business was incorporated, and therefore it would be an improper deduction to the taxpayers. It would be a tax deduction to the corporation on its tax returns. And that's why that's not an appropriate deduction for taxpayers is because it's a corporate expense. I believe they incorporated their business in November and their reimbursements for the checks were on NT corporate checks. Did they do a corporate return or was this all reported on the Schedule C? They reported it in the Schedule C's. So what difference would it make if it's purchased by the corporation or not? If it's passed through to the Schedule C, what difference does it make? She was operating as a sole proprietor and that's why they were taking on their individual's concerns. Afterwards, it was incorporated. They would report it on a corporate return. It would have been a corporate deduction, not a sole proprietor deduction as they were trying to take it. Let me go back to your suggestion of 21 days to study this. Does that encompass all of these other things, too, or just the double counting issue? No, just the double counting issue. So we still have in our lap to decide the other things that he's appealing. Yes, Your Honor, we believe that. That really doesn't advance the ball too much, does it? Well, we believe that that's the only really issue outstanding that we would like to address, and again, we sought throughout the briefing process to confirm that the calculations were correct. It is a complex analysis. Taxpayer himself has conceded only on the reply briefs that the state taxes should have been included. I guess what I'm saying is we're not going to get out of having to decide the case. Even if you come back and say, yeah, he's right, we double counted, we still have all his other issues to deal with. Yes, Your Honor. We believe the deductions were totally properly disallowed. He does not need the burden. Gotcha. Anything else? Any questions? Thank you, Mr. Parker. Thank you so much. Mr. LeBlanc, you've got about a minute and change. If you'd keep it to that, please, we'd appreciate it. Well, I think that we are at a point that we need a decision on the double counting. In terms of the receipts, it is absolutely clear to me in looking at the process that due consideration of all of these receipts that my former wife accumulated and had organized and were summarized, there was not proper consideration of those receipts. And the fact is that during the testimony, we have 45 minutes of testimony regarding the travel expenses. I was very surprised when the opinion came out from Judge Lerle that none of those travel expenses were allowed after he had indicated on the record that he was comfortable, they had been substantiated, we didn't need any more testimony from Ms. Michelson. I relied on that, and then it turned out that the deduction was completely disallowed. So I leave myself in your hands. Thank you. Thank you very much. Mr. Parker, thank you as well. The case just argued is submitted. Thank you. Is Mr. Ann Zaruth present? Okay. We'll jump ahead then to the first case. You're a little late, so we took your case, we put your case out of order. We'll call it now. 05-71258, Loganazoff v. Mukasey. Each side will have 10 minutes. Thank you. I apologize for the voice being late.
judges: Silverman, Callahan, Mills